[Cite as *State v. Craver*, 2011-Ohio-5542.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE   COUNTY

STATE OF OHIO                           :
                                        :          Appellate Case No. 2010-CA-57
        Plaintiff-Appellee              :
                                        :          Trial Court Case No. 09-CR-142
v.                                      :
                                        :
MICHAEL CRAVER             :          (Criminal Appeal from
                                        :              Common Pleas Court)
        Defendant-Appellant       :
                                        :

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of October, 2011.

. . . . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. #0009172, by STEPHANIE R. HAYDEN, Atty. Reg. #0082881, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

CHRIS BECK, Atty. Reg. #0081844, Brezine Law Office, 188 West Hebble Avenue, Fairborn, Ohio 45324
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}   Defendant-appellant Michael Craver appeals from his conviction and sentence, following a no-contest plea, for Felonious Assault, in violation of R.C. 2903.11(A)(2), and Fleeing and Eluding, in violation of R.C. 2921.331(B).   He contends that the trial court erred

in overruling his motion to suppress evidence upon the ground that the evidence was obtained as a result of an unlawful search and seizure.

{¶ 2} We conclude that the trial court did not err in overruling Craver's motion to suppress. The evidence adduced at the suppression hearing established that Craver was detained for only a few seconds while Beavercreek Police Officer Charmaine Hall struggled, unsuccessfully, to prevent Craver from starting his engine and departing the scene, and that no evidence was obtained as a result of this brief detention. Furthermore, we agree with the trial court that Officer Hall had a reasonable and articulable suspicion that Craver had committed an offense, justifying a brief, investigative detention. Accordingly, the judgment of the trial court is Affirmed.

I

{¶ 3} While Beavercreek Police Officer Charmaine Hall was at a Meijer store for an unrelated reason, she noticed a gray Cadillac with its hood up parked in a fire lane near the store. She pulled in behind the vehicle, walked around the vehicle, and saw that the keys were in the ignition, and that what "seemed like oil or some type of fluid had been spit or sprayed about in the vehicle," giving her the impression that it was disabled. No one was inside the Cadillac.

{¶ 4} Hall got back in her cruiser and called dispatch to ask that the Meijer management be called to see if management knew why the Cadillac was parked in the fire lane. While she was waiting for a response, she noticed Craver exiting the Meijer store, pushing a cart. Hall had previously checked the registration on the Cadillac, and had determined that it was registered to a female. Craver went to the right front end of the

Cadillac.

{¶ 5}  Hall testified concerning what followed:

{¶ 6}  "A.  I get out of the car to – I'm questioning him if it is his vehicle.  He advised me that it is his vehicle, and he and I begin to converse as I'm walking towards the front of the Cadillac.   He is explaining to me why the vehicle is in the fire lane.

{¶ 7}  " * * *

{¶ 8}  "Q.  And what was the explanation for why it was in the fire lane?

{¶ 9}  "A.  He advised me his vehicle had broke down, he couldn't find anybody to help him push it, and that was more-or-less where it came to stop.

{¶ 10} "Q.  What did you do then?

{¶ 11} "A.  He and I continued to discuss it.   I ask him for identification and he walks in front of the vehicle to go to the driver door to get in because he tells me his identification is in the car.

{¶ 12} "As he's getting into the car, I also asked him for a receipt for the merchandise that I see in the cart.   He –

{¶ 13} "Q.  I'm sorry to interrupt you, Officer.   I'm going to back up for just a moment.

{¶ 14} "Why did you ask him for his identification?

{¶ 15} "A.  Because the vehicle is returning to a female, and I needed to identify who he was, possible violation of the fire lane, that he may have been issued a ticket if, you know, I needed to do so.  And to determine if he was allowed to be in that vehicle since it was not his vehicle.

{¶ 16} "Q.  What if anything caused you to ask him for a receipt for the merchandise in

the cart?

{¶ 17} "A.　There was merchandise in the cart as well as underneath, and the merchandise in the cart was covered by what appeared to be a brand new towel that would just have come out of the store.

{¶ 18} "Q.　What was it that made you believe it was brand new?

{¶ 19} "A.　I could see the folds in it like someone had just taken it off the shelf and unfolded it.　To me it gave the appearance that it was a brand new towel.

{¶ 20} "Q.　The merchandise that was underneath the towel, could you see some of that merchandise?

{¶ 21} "A.　Yes.

{¶ 22} "Q.　Was any of that merchandise bagged?

{¶ 23} "A.　No.

{¶ 24} "Q.　And the towels were not bagged?

{¶ 25} "A.　No.

{¶ 26} "Q.　And you asked him for the identification?

{¶ 27} "A.　Yes.

{¶ 28} "Q.　And for the receipt.

{¶ 29} "A.　Yes.

{¶ 30} "Q.　As he was getting into the driver's side of the vehicle.

{¶ 31} "A.　Correct.

{¶ 32} "Q.　Then what happened?

{¶ 33} "A.　He gets back out of the vehicle.　I'm still asking for the I.D., receipt, and he

reaches up to close the hood and I try to catch it when it clicks on the first latch. We're still talking about the receipt and the driver's license and he gets back into the driver's side of the vehicle.

**{¶ 34}** "He leans over towards the passenger seat like he's getting ready to hand me the driver's license, and when he comes back up, his right hand went straight for the keys and that's when we began going back and forth; me trying to stop him from starting the car and he's trying to start the car.

**{¶ 35}** " * * *

**{¶ 36}** "Q. And at that point, you put your hands inside the vehicle.

**{¶ 37}** "A. Yes.

**{¶ 38}** "Q. In an attempt to stop him.

**{¶ 39}** "A. Yes.

**{¶ 40}** "Q. From turning that vehicle over; from starting the engine?

**{¶ 41}** "A. Yes.

**{¶ 42}** "Q. Prior to that moment, had you ever indicated to that individual – well, let me just ask you, this person we're talking about is the Defendant, Michael Craver, is that correct?

**{¶ 43}** "A. Yes.

**{¶ 44}** "Q. Okay. Does he [sic] ever indicate to Mr. Craver that he couldn't leave?

**{¶ 45}** "A. No, I did not.

**{¶ 46}** "Q. Did you ever pull your weapon out?

**{¶ 47}** "A. No, I did not.

**{¶ 48}** "Q. Did you ever tell him Mr. Craver to sit tight; you were going to write a

ticket?

{¶ 49} "A.  No, I did not.

{¶ 50} "Q.  So up to the point at which he attempts to start the car, you never told him he wasn't free to leave, is that correct?

{¶ 51} "A.  That's correct.

{¶ 52} "Q.  All right.  Now, even up to the point where you put your hands inside the car, you don't actually vocalize that, do you, you never say, 'You're not free to leave.' "

{¶ 53} "A.  No, I did not.

{¶ 54} "Q.  But you do put your hand in and try to stop him from turning the car over?

{¶ 55} "A.  That's correct.

{¶ 56} " * * *

{¶ 57} "Q.  Is he successful in starting the engine?

{¶ 58} "A.  Yes.

{¶ 59} "Q.  Describe for the Court what transpired at that moment; what happens?

{¶ 60} "A.  As he and I are tussling; me trying to pull the key out to prevent him from turning it, I can hear that he did get it started up.  But at some point either I turned the car off or it stalled out as he's pulling down the gear.  So he has to put it back in gear and we're back to the tussle of me trying to prevent him from starting up the car, him trying to start the car.

{¶ 61} "And this goes on two or three times where I could hear the car start but it either stalls out or I'm actually successful in turning it back off, but I never get the keys out.

{¶ 62} "And then on the final attempt, he actually gets it started, his foot is on the gas, I could hear the engine revving high, and that's when I tried to get out of the way.

{¶ 63} "Q. Were you successful in getting out of the way?

{¶ 64} "A. Not completely.

{¶ 65} "Q. What happened?

{¶ 66} "A. As he's pulling off, his driver door slams into my left arm.

{¶ 67} " * * *

{¶ 68} "Q. Before he turned the engine on and attempted to leave, did he make any attempt to put any of that merchandise inside that vehicle?

{¶ 69} "A. No. Once he left the cart and he and I began going back and forth, there was no discussion or anything about the merchandise. He never went back to it.

{¶ 70} "Q. So at this point he has taken off?

{¶ 71} "A. Yes.

{¶ 72} "Q. And he's hit you with the – or the driver's side door hit you?

{¶ 73} "A. Yes.

{¶ 74} "Q. As a result of his attempts to leave?

{¶ 75} "A. Yes."

{¶ 76} Hall got in her cruiser and pursued Craver. She and another officer succeeded in apprehending Craver. Craver was arrested and charged by indictment with: Felonious Assault Upon a Police Officer by means of a Deadly Weapon, to wit: a Motor Vehicle, in violation of R.C. 2903.11(A)(2); Robbery, in violation of R.C. 2911.02(A)(2); and Fleeing and Eluding, in violation of R.C. 2921.331(B).

{¶ 77} Craver moved to suppress evidence, contending, among other things, that it was obtained as a result of an unlawful search and seizure. Following a hearing, his motion was

overruled. Thereafter, Craver pled no contest to Felonious Assault and to Fleeing and Eluding, and the Robbery charge was dismissed.

{¶ 78} Craver was found guilty of Felonious Assault and of Fleeing and Eluding. He was sentenced to three years for Felonious Assault, and to four years for Fleeing and Eluding, to be served consecutively, for an aggregate sentence of seven years. From his conviction and sentence, Craver appeals.

II

{¶ 79} Craver's sole assignment of error is as follows:

{¶ 80} "THE TRIAL COURT ERRED BY OVERRULING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE POLICE OFFICER DID NOT HAVE A REASONABLE AND ARTICULABLE SUPSICION [sic] THAT APPELLANT WAS ENGAGED IN CRIMINAL ACTIVITY AND THE OFFICER NEVER INFORMED DEFENDANT THAT HE WAS NOT FREE TO LEAVE IN VIOLATION OF DEFENDANT'S FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

{¶ 81} Evidence obtained as a result of an unlawful search and seizure is subject to exclusion. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. A brief, investigative stop is permitted if the police officer has a reasonable, articulable suspicion that the person stopped is involved in criminal activity. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 82} Craver's argument is somewhat difficult to follow. He seems to be arguing both that he was never, in fact, detained by Officer Hall, and that his detention was unlawful.

{¶ 83} From the evidence in the record, we conclude that Craver was not detained until

Officer Hall struggled to keep him from starting his engine. As Craver himself argues, he was never informed that he was not free to leave. It was only when Officer Hall physically interfered with Craver's attempt to start his engine and drive off that Craver's liberty was restrained. And from the record, it is clear that this struggle only lasted a matter of seconds before Craver succeeded in starting his engine and fleeing the scene.

{¶ 84} It is also clear from the record that no evidence was obtained during, or as a result of, the brief restraint on Craver's liberty represented by Officer Hall's unsuccessful attempt to prevent him from starting his engine. Thus, there was no evidence for the trial court to suppress.

{¶ 85} Additionally, we agree with the trial court that Officer Hall had, in fact, a reasonable and articulable suspicion of criminal activity justifying a brief, investigative stop. The Cadillac was illegally parked in a fire lane, and the cart containing merchandise, which Craver seemed eager to abandon, was suspicious.

{¶ 86} Craver's sole assignment of error is overruled.

### III

{¶ 87} Craver's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

GRADY, P.J., and KLINE, J., concur.

(Hon. Roger L. Kline, Fourth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Stephen K. Haller
Stephanie R. Hayden
Chris Beck
Hon. Michael A. Buckwalter
(for Hon. J. Timothy Campbell)